## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF NEW YORK

Sepideh Seyedzadeh Sabounchi,

      *Petitioner*,

      v.

DONALD TRUMP, President of the United States; U.S. DEPARTMENT OF HOMELAND SECURITY ("DHS"); U.S. CUSTOMS AND BORDER PROTECTION ("CBP"); JOHN KELLY, Secretary of DHS; KEVIN K. MCALEENAN, Acting Commissioner of CBP; and JAMES T. MADDEN, New York Field Director, CBP,

      *Respondents*.

Case No. 17-cv-486

Date: January 28, 2017

## PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## INTRODUCTION

Petitioner Sepideh Seyedzadeh Sabounchi, a thirty-three year-old visitor arriving on a tourist visa, landed at John F. Kennedy International Airport ("JFK Airport") in the morning of January 28, 2017. Petitioner Seyedzadeh Sabounchi was granted a B-2 tourist in or around early December 2016 for the purpose of visiting her sister. After conducting standard procedures of administrative processing and security checks, the federal government has deemed Petitioner not to pose threats to the United States.

Despite these findings and Petitioner's valid entry documents, U.S. Customs and Border Protection ("CBP") blocked Petitioner from exiting JFK Airport and detained Petitioner therein. No magistrate has determined that there is sufficient justification for the continued detention of Petitioner. Instead, CBP is holding Petitioner at JFK Airport solely pursuant to an executive order issued on January 27, 2017.

Because the executive order is unlawful as applied to Petitioner, her continued detention based solely on the executive order violates her Fifth Amendment procedural and substantive due process rights, violates the First Amendment Establishment Clause, is ultra vires the immigration statutes, and violates the Administrative Procedure Act and Religious Freedom Restoration Act. Further, Petitioner's continued unlawful detention is part of a widespread pattern applied to many refugees and arriving aliens detained after the issuance of the January 27, 2017 executive order. Therefore, Petitioner respectfully applies to this Court for a writ of habeas corpus to remedy her unlawful detention by Respondents, and for declaratory and injunctive relief to prevent such harms from recurring.

## JURISDICTION AND VENUE

1. Jurisdiction is conferred on this court by 28 U.S.C. §§ 1331, 1361, 2241, 2243, and the Habeas Corpus Suspension Clause of the U.S. Constitution. This court has further remedial authority pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*.

2. Venue properly lies within the Eastern District of New York because a substantial part of the events or omissions giving rise to this action occurred in the District. 28 U.S.C. § 1391(b).

3. No petition for habeas corpus has previously been filed in any court to review Petitioner's case.

## PARTIES

4. Petitioner is a thirty-three year-old Iranian national, arriving on a tourist visa, who landed at John F. Kennedy International Airport ("JFK Airport") in the morning of January 28, 2017 and has been held by U.S. Customs and Border Protection ("CBP") since her arrival.

5. The U.S. Department of Homeland Security ("DHS") is a cabinet department of the United States federal government with the primary mission of securing the United States.

6. CBP is an agency within DHS with the primary mission of detecting and preventing the unlawful entry of persons and goods into the United States.

7. Respondent John Kelly is the Secretary of DHS. Secretary Kelly has immediate custody of Petitioners and other members of the proposed class. He is sued in his official capacity.

8.     Respondent Kevin K. McAleenan is the Acting Commissioner of CBP. Acting Commissioner McAleenan has immediate custody of Petitioners and other members of the proposed class. He is sued in his official capacity.

9.     Respondent James T. Madden is the Director of the New York Field Office of CBP, which has immediate custody of Petitioners and other members of the proposed class. He is sued in his official capacity.

10.    Respondent Donald Trump is the President of the United States. He is sued in his official capacity.

## STATEMENT OF FACTS

### President Trump's January 27, 2017 Executive Order

11.    On January 20, 2017, Donald Trump was inaugurated as the forty-fifth President of the United States.

12.    One week later, on January 27, President Trump signed an executive order entitled, "Protecting the Nation from Foreign Terrorist Entry into the United States," which is attached hereto as Exhibit A and is hereinafter referred to as the "EO."

13.    Citing the threat of terrorism committed by foreign nationals, the EO directs a variety of changes to the manner and extent to which non-citizens may seek and obtain admission to the United States, particularly (although not exclusively) as refugees. Among other things, the EO imposes a 120-day moratorium on the refugee resettlement program as a whole; proclaims that "that the entry of nationals of Syria as refugees is detrimental to the interests of the United States," and therefore "suspend[s]" indefinitely their entry to the country; similarly

4

proclaims that "the entry of more than 50,000 refugees in fiscal year 2017 would be detrimental to the interests" of the country.

14.     Most relevant to the instant action is Section 3(c) of the EO, in which President Trump proclaims "that the immigrant and nonimmigrant entry into the United States of aliens from countries referred to in section 217(a)(12) of the INA, 8 U.S.C. 1187(a)(12), would be detrimental to the interests of the United States," and that he is therefore "suspend[ing] entry into the United States, as immigrants and nonimmigrants, of such persons for 90 days from the date of this order," with narrow exceptions not relevant here.

15.     There are seven countries that fit the criteria in 8 U.S.C. § 1187(a)(12): Iraq, Iran, Libya, Somalia, Sudan, Syria, and Yemen.  According to the terms of the EO, therefore, the "entry into the United States" of non-citizens from those countries is "suspended" from 90 days from the date of the EO.

**Petitioner Sepideh Seyedzadeh Sabounchi**

16.     Petitioner is an Iranian national aged 33, and a resident of Tehran, Iran.

17.     Petitioner was issued a B-2 tourist visa by the U.S. Consulate in Dubai, in or about early December 2016.

18.     In the afternoon of January 27, 2016, Petitioner's sister called a United States Department of State general inquiry phone number to inquire as to whether Petitioner would be admitted to the United States upon arrival.  Petitioner's sister was informed that Petitioner would be able to enter the United States upon her arrival at JFK Airport.

19. On January 28, 2017, Petitioner arrived at JFK Airport, by Azerbaijan Air flight number 101. Upon her arrival at JFK Airport, Petitioner was denied entry to the United States and told she would be sent back to Iran.

20. Petitioner is not being permitted to meet or speak with her attorneys, who are present at JFK Airport. Petitioner's attorneys have made multiple requests of Officer Bayol and Supervisor Erkados of CBP to meet or speak with Petitioner. Officer Bayol and Supervisor Erkados of CBP informed attorneys for Petitioner that CBP would not currently permit Petitioner to speak with her attorneys or her sister.

21. Upon knowledge and belief, Petitioner remains in the custody of CBP at JFK Airport.

22. Upon knowledge and belief, Petitioner is not being allowed entry into the United States.

23. Upon knowledge and belief, Petitioner is at imminent risk of being returned to Iran against her will.

## CAUSES OF ACTION

### COUNT ONE
### FIFTH AMENDMENT – PROCEDURAL DUE PROCESS
### DENIAL OF RIGHT TO COUNSEL

24. Petitioner repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

25. Procedural due process requires that the government be constrained before it acts in a way that deprives individuals of liberty interests protected under the Due Process Clause of

the Fifth Amendment. Additionally, due process requires that arriving immigrants be afforded those statutory rights granted by Congress and the principle that "[m]inimum due process rights attach to statutory rights." *Dia v. Ashcroft*, 353 F.3d 228, 239 (3d Cir. 2003) (alteration in original) (quoting *Marincas v. Lewis*, 92 F.3d 195, 203 (3d Cir. 1996)).

26. Consistent with these United States statutory and international law obligations, individuals arriving at United States ports of entry must be afforded an opportunity to consult with counsel and promptly be received and processed by United States authorities.

27. Respondents' actions in denying Petitioners access to counsel violate the procedural due process rights guaranteed by the Fourteenth Amendment.

## COUNT TWO
## FIRST AMENDMENT – ESTABLISHMENT CLAUSE

28. Petitioner repeats and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

29. By invalidating visas held by citizens from Iraq, Iran, Libya, Somalia, Sudan, Syria, and Yemen, the EO exhibits hostility to a specific religious faith, Islam, and gives preference to other religious faiths, principally Christianity. The EO therefore violates the Establishment Clause of the First Amendment by not pursuing a course of neutrality with regard to different religious faiths.

## COUNT THREE
## FIFTH AMENDMENT – EQUAL PROTECTION

30. Petitioner repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

31. The EO discriminates against the Petitioner on the basis of her country of origin and religion, without sufficient justification, and therefore violates the equal protection component of the Due Process Clause of the Fifth Amendment.

32. Additionally, the EO was substantially motivated by animus toward—and has a disparate effect on—Muslims, which also violates the equal protection component of the Due Process Clause of the Fifth Amendment. *Jana-Rock Const., Inc. v. N.Y. State Dep't of Econ. Dev.*, 438 F.3d 195, 204 (2d Cir. 2006); *Hunter v. Underwood*, 471 U.S. 222 (1985).

33. Respondents have demonstrated an intent to discriminate against Petitioner on the basis of religion through repeated public statements that make clear the EO was designed to prohibit the entry of Muslims to the United States. *See* Michael D. Shear & Helene Cooper, *Trump Bars Refugees and Citizens of 7 Muslim Countries,* N.Y. Times (Jan. 27, 2017), ("[President Trump] ordered that Christians and others from minority religions be granted priority over Muslims."); Carol Morello, *Trump Signs Order Temporarily Halting Admission of Refugees, Promises Priority for Christians*, Wash. Post (Jan. 27, 2017).

34. Applying a general law in a fashion that discriminates on the basis of religion in this way violates Petitioner's rights to equal protection the Fifth Amendment Due Process Clause. *Hayden v. County of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999); *Yick Wo v. Hopkins*, 118 U.S. 356, 373-74 (1886). Petitioner satisfies the Supreme Court's test to determine whether a facially neutral law – in the case, the EO and federal immigration law – has been applied in a discriminatory fashion. The Supreme Court requires an individual bringing suit to challenge the application of a law bear the burden of demonstrating a "prima facie case of discriminatory purpose."*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266-7 (1977). This

8

test examines the impact of the official action, whether there has been a clear pattern unexplainable on other grounds besides discrimination, the historical background of the decision, the specific sequence of events leading up to the challenged decision, and departures from the normal procedural sequence. *Id.*

35. Here, President Donald Trump and senior staff have made clear that EO will be applied to primarily exclude individuals on the basis of their national origin and being Muslim. *See, e.g.*, Donald J. Trump, *Donald J. Trump Statement On Preventing Muslim Immigration* (Dec. 7, 2015), Trump Campaign website (accessible at *https://www.donaldjtrump.com/press-releases/donald-j.-trump-statement-on-preventing-muslim-immigration*) ("Donald J. Trump is calling for a total and complete shutdown of Muslims entering the United States until our country's representatives can figure out what is going on."); Abby Phillip and Abigail Hauslohner, *Trump on the Future of Proposed Muslim Ban, Registry: 'You know my plans'*, Wash. Post (Dec. 22, 2016). Further, the President has promised that preferential treatment will be given to Christians, unequivocally demonstrating the special preferences and discriminatory impact that the EO has upon Petitioner. *See* sources cited, *supra* ¶ 36.

36. Thus, Respondents have applied the EO with forbidden animus and discriminatory intent in violation of the equal protection of the Fifth Amendment and violated Petitioner's equal protection rights.

## COUNT FOUR
## ADMINISTRATIVE PROCEDURE ACT

37. Petitioner repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

38. Respondents detained Petitioner solely pursuant to an executive order issued on January 27, 2017, which expressly discriminates against Petitioner on the basis of her country of origin and was substantially motivated by animus toward Muslims. *See supra* Count Five.

39. The EO exhibits hostility to a specific religious faith, Islam, and gives preference to other religious faiths, principally Christianity.

40. The INA forbids discrimination in issuance of visas based on a person's race, nationality, place of birth, or place of residence. 8 U.S.C. § 1152(a)(1)(A).

41. The INA and implementing regulations, including 8 U.S.C. § 1225(b)(1) (expedited removal), 8 C.F.R. §§ 235.3(b)(4), 208.30, and 1003.42; 8 U.S.C. § 1158 (asylum), and 8 U.S.C. § 1231(b)(3) (withholding of removal), and the United Nations Convention Against Torture ("CAT"), implemented in the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), Pub.L. No. 105-277, div. G, Title XXII, § 2242, 112 Stat. 2681, 2681-822 (1998) (codified at 8 U.S.C. § 1231 note), entitle Petitioner to an opportunity to apply for asylum, withholding of removal, and CAT relief.

42. Respondents' actions in detaining and mistreating Petitioner were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, in violation of APA § 706(2)(A); contrary to constitutional right, power, privilege, or immunity, in violation of APA § 706(2)(B); in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, in violation of APA § 706(2)(C); and without observance of procedure required by law, in violation of § 706(2)(D).

## COUNT FIVE
## RELIGIOUS FREEDOM RESTORATION ACT

43. Petitioner repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

44. The EO will have the effect of imposing a special disability on the basis of religious views or religious status, by withdrawing an important immigration benefit principally from Muslims on account of their religion. In doing so, the EO places a substantial burden on Petitioner's exercise of religion in a way that is not the least restrictive means of furthering a compelling governmental interest.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Petitioner prays that this Court grant the following relief:

(1) Issue a Writ of Habeas Corpus requiring Respondents to release Petitioner forthwith;

(2) Issue an injunction ordering Respondents not to detain any individual solely on the basis of the EO;

(3) Enter a judgment declaring that Respondents' detention of Petitioner is and will be unauthorized by statute and contrary to law;

(4) Award Petitioner and other members of the proposed class reasonable costs and attorney's fees; and

(5) Grant any other and further relief that this Court may deem fit and proper.

DATED: January 28, 2017
Brooklyn, New York

Respectfully submitted,

*/s/ Avi Gesser*
DAVIS POLK & WARDWELL LLP
Avi Gesser
Sharon Katz
Edith Beerdsen
450 Lexington Avenue
New York, NY 10017
avi.gesser@davispolk.com
edith.beerdsen@davispolk.com
(212) 450-4000

Caroline H. Zalka
WEIL GOTSHAL & MANGES, LLP
767 Fifth Avenue
New York, NY 10153
Caroline.zalka@weil.com
(212) 310-8000

Attorneys for Petitioner